## WILLIAM A. MURRAY SPRING CO. v. FORT PITT BEDDING CO.

Circuit Court of Appeals, Third Circuit.
Jan. 19, 1928.

No. 3637.

**Patents ⟨key⟩328—1,172,724, for small, self-contained, unattached spring seat for automobiles, held valid and infringed.**

Murray patent, No. 1,172,724, for a small, unitary, self-contained, unattached spring seat for use in automobiles and other vehicles, *held* valid and infringed.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Suit in equity by the William A. Murray Spring Company against the Ft. Pitt Bedding Company. Decree for defendant, and complainant appeals. Reversed and remanded.

Walter F. Murray, of Cincinnati, Ohio, for appellant.

E. W. McCallister and Green & McCallister, all of Pittsburgh, Pa., and Alfred M. Houghton, of Washington, D. C., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the Murray Spring Company, owner of patent No. 1,172,724, granted February 22, 1916, to the Murrays for a spring seat, charged the Ft. Pitt Bedding Company with infringement thereof. On final hearing that court held the patent invalid, and from a decree dismissing the bill this appeal was taken.

The patent concerns a small, removable, unitary, self-contained, unattached spring seat, adapted to be used in automobiles and other vehicles, in which the spring inclosing and supporting frame has leather or fabric covering. The general makeup of such seats in use before this patent and the well-known elements used therein may be thus described: Several rows of spiral springs were located between an upper and lower square or oblong metallic frame or rim. Within the upper frame the broader ends of the spiral springs were placed, and secured to each other and to the inclosing frame by clamps. The lower ends of the springs were attached to metallic cross-strips, which at their ends overlapped and were clamped to the lower supporting frame or rim. The upper frame was covered with a sheet of leather or fiber covering, and the edges thereof were then drawn down and fastened to the lower supporting frame or rim, by being overlapped over the several portions between the overlapping ends of the cross-strips. A sleeve or envelope was then used to clamp the leather or other covering to that section of the lower supporting frame between the several overlapping cross-strip ends.

It will be observed that the cross-strip ends so overlapped the rim or lower frame as not to allow the enveloping sleeve to be carried over them. This general construction was used by Murray and other spring makers for a long time prior to the patent. It was open to objection, in that it did not afford a satisfactory means of completely attaching the leather or other covering to the lower supporting frame and protecting it from wear. Murray's invention was exceedingly simple, but, like many other devices of a simple nature, effected so marked an improvement over the old form as to result in a sale thereof by the plaintiff company and to a copying thereof by the defendant. This change consisted simply in taking the old lower supporting frame, with its cross-strip supporting member, and making such a groove or recess on the lower side of these cross-strips that the plurality of enveloping sleeves located between the clamping ends of the transverse sections could be dispensed with, and be replaced by an unbroken continuous sleeve, which extended over the whole length of the rim of the lower supporting frame.

We assume that all of these elements, in and of themselves, to wit, the spiral springs, the upper and lower supporting frames, and cross-strips, were old, and there was no inventive act involved in merely putting a groove of any particular shape in a cross-strip, but Murray was the first to have conceived and made the combination of, first, a bottom frame; second, cross-strips secured to the frame and inwardly projecting offsets adjacent to the frame; third, a sleeve which covered the whole side length of the frame rim and fitted into the cross-strip offsets, and which clamped the entire length of the lower edge of the seat covering to the entire length of the rim of the bottom frame; or, as stated in the third claim, first, a new article of manufacture; second, a metallic cross-strip for vehicle seats having adjacent to its ends transverse offsets; third, offsets adapted to receive the edge of the covering of a seat. This device, under the proofs, was highly acceptable to the trade, and from the time the patent was granted until 1917 some 400,000 sets

of Murray's seats were sold. At this time the government took over the plaintiff's plant for use in making machine gun and rifle springs, and their ordinary trade was abandoned or drifted away, until they again started in 1919, from which time they have built up an increasing trade.

The proof is that in the older method "the upholstering was made in a pad for the seat, with the skirts, the side curtains, hanging down enough to wrap around the underneath frame, and then there were clips or sections of molding that fastened between—around that, in between the cross-strips. You could not put a straight molding clean through, on account of the cross-strip interfering." The trade objected to the wearing of the fabric at the intersection of the cross-strips, and the advantage of the patented article over the old method was that "they could put the curtain clean along the bottom, and fold it clean in, and put the strip of molding all the way through, and it protected the whole bottom; it kept the cross-section strip off the seat, the wooden seat or platform that it rested on, and the molding protected the fabric all the way around the seat." For their disclosure the Murrays were awarded the patent in suit, and the prima facie of invention evidenced by the issue of such patent is not overcome by the defendant, and apart from that we are of opinion the device involved invention.

We have not overlooked the patents referred to by the court below as justifying it in holding the patent in suit void of invention. To us, however, it is clear that none of them involved the problem which the patent before us solved, and which the needs of the trade in which the two patentees were working called on their company to solve. Not involving the problem the Murrays did solve, these prior patents gave them no help in its solution. Homan's patent, No. 519,792 of 1894, was not for an unattached, self-contained, removable spring seat, but was for an immovable and fixed chair seat, which was mortised to the legs of the chair. Murray's patent, No. 692,535, was also for an immovable chair or couch seat, and was addressed to the problem, not of protecting the fiber or covering of a seat, but to a strengthening problem, namely, as stated, "to provide cross-strips which offer the maximum re-

sistance to a bending strain with the smallest amount of metal, which affords seats into which the springs are readily placed and locked, and which are simple and inexpensive in their construction." The depressions in the cross-strip of this patent extended across, and were made by the whole width of the seat, and such depression was used to permit the springs to be seated in a lower level. It did not clamp the covering to a movable seat, but attached it to the frame of the chair or couch.

Without entering into details as to the other patents for the seats of railroad and street cars, we are of opinion that they are still further removed from the field which the plaintiff and defendant serve, and we find none of them threw any light whatever on the problem which the Murrays solved; and in that connection we may say that its solution was not self-evident, for the proofs show a long series of futile attempts to make a satisfactory seat before this successful device was lighted on. While the defendants, with a litigant's breath, extol these prior patents to minimize the plaintiff's device, yet in their business practice they magnify that device by using it alone, and minimize what in litigation they praise by ignoring the aid of every feature of it. They fail in their shop work to practice what they preach in proof, and, as always, their actions speak louder than their words. The Murrays' combination for the first time showed use of a continuous sleeve which protected every part of the edges of the seat covering, and for the first time a transverse groove in a cross-strip so located as to allow use of such continuous clamping enveloping sleeve. As a practical result, the combination embodying these elements, for the first time in the art, produced for the first time in the art a unitary removable spring seat with the full length of the edges of its covering completely enveloped and clamped by a continuance sleeve which prevented abrasion of such covering. It was this combination, original in conception as a combination and strikingly useful in combination product, that made this simple unitary device worthy of patent protection.

The decree below will therefore be reversed, and the record remanded for the entry of a decree of validity and accounting.