## WILLIAM A. MURRAY SPRING CO. v. FORT PITT BEDDING CO.

### No. 4344.

Circuit Court of Appeals, Third Circuit.

June 18, 1930.

Walter F. Murray, of Cincinnati, Ohio, Archworth Martin, of Pittsburgh, Pa., and Murray & Zugelter, of Cincinnati, Ohio, for appellant.

Chas. F. C. Arensberg, E. W. McCallister, Green & McCallister, and Patterson, Crawford, Arensberg & Dunn, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMSON, District Judge.

BUFFINGTON, Circuit Judge.

In a bill filed in the court below, this court [see 23 F.(2d) 559, 560] held patent No. 1,172,724 for a spring seat granted February 22, 1916, to Murray, valid and infringed by the Fort Pitt Bedding Company, and it was there said of the Murray invention: "As a practical result, the combination embodying these elements, for the first time in the art, produced for the first time in the art a unitary removable spring seat with the full length of the edges of its covering completely enveloped and clamped by a continuous sleeve which prevented abrasion of such covering."

It will thus be noted that the new product which Murray gave the art—and such new product was the practical and patent-protected thing—was a seat "with the full length of the edges of the covering completely enveloped and clamped by a continuous sleeve which prevented abrasion of such covering." As stated therein, the device went into wide use. Subsequent to the decision of that case, the plaintiffs, in order to protect themselves against the same infringer, were forced to file a supplemental bill to protect themselves against further alleged infringement. On final hearing, such supplemental bill was dismissed. Whereupon this appeal was taken. In our view, the court below failed to grasp the significance of our former decision. As shown by the excerpt quoted, the gist of the patent was the result obtained by it, namely, a covering "protected from wear by a clamped continuous sleeve." That was the new product, a monopoly of which the patentee was given. All three of defendant's devices protect the covering from wear, and they do it by a continuous sleeve which allows no abrasion. They contend, however, they do it a different way from Murray, in that he used a groove in his cross-sections, and they use no groove. But it will be noted that, while Murray used a U-shaped, cross-section groove, that the effective, functional part or agency of his groove was the outer leg of the U and its depressed bottom, while the other leg of the U was nonfunctional. It was the upstanding shoulder of the functional side of the U which the material covered,

and the depression of the bottom of the U which permitted continuous clamping.

While the patent showed a groove, and in fact it was a groove, it was its recess bottom that constituted its functional efficiency. Indeed, such recess character was mentioned in the opinion wherein we refer to "making such a groove or *recess* on the lower side of these cross-strips that the plurality of enveloping sleeves located between the clamping ends of the transverse sections could be dispensed with and be replaced by an unbroken continuous sleeve, which extended over the whole length of the rim of the lower supporting frame." The defendants, instead of using a groove or cross-section recess, have recessed the entire cross-section by lowering it. But this change of form retains the whole substance of functional capacity of Murray's groove. What they have in effect done is to retain the functional side of Murray's groove and flatten out the nonfunctional side thereof by the use of a lowered or depressed cross-strip. While varying the form, they have retained function, and their depressed and recessed cross-strip is the functional equivalent of Murray's groove. In our judgment, they obtain Murray's result, and they do it by what are the mechanical functional equivalents of Murray's device. For doing so they must be adjudged infringers, and as such liable to account.